**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JONATHAN ARGUETA CASTELLON,<br>Petitioner,<br>v.<br>DEPARTMENT OF HOMELAND SECURITY,<br>Respondent. | Case No. 5:26-cv-04245-AJR<br>**MEMORANDUM DECISION AND ORDER GRANTING PETITION AND ORDERING IMMEDIATE RELEASE** |

**I.**

**INTRODUCTION**

On July 27, 2026, Petitioner Jonathan Argueta Castellon (A# 208-135-047) ("Petitioner"), an immigration detainee then proceeding *pro se*, filed a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 (the "Petition"), challenging his detention in immigration custody. (Dkt. 1.) On August 5, 2026, Respondent Department of Homeland Security ("Respondent" or "DHS") filed an Answer to the Petition (the "Answer"). (Dkt. 8.) On August 7, 2026, the Office of the Federal Public Defender appeared in the action on Petitioner's behalf. (Dkt. 9.) On August 17, 2026, Petitioner filed a Reply to the Answer (the "Reply"). (Dkt. 14.) The

parties have consented to proceed before the undersigned U.S. Magistrate Judge for all purposes. (Dkts. 11, 13.) **For the reasons set forth below, the Court GRANTS the Petition and orders Respondent to immediately release Petitioner from custody on his prior Order of Supervision ("OSUP").**

## II.
## FACTUAL BACKGROUND

Petitioner is a citizen of El Salvador. (Dkt. 8 at 2.) On August 1, 2015, Petitioner entered the United States without inspection. (Id.) On August 7, 2015, Petitioner was issued a Notice to Appear. (Id.) On June 13, 2018, Petitioner was convicted driving under the influence. (Id.) On December 21, 2018, an Immigration Judge ordered Petitioner removed to El Salvador, but also granted withholding of removal to El Salvador. (Id.) Petitioner does not appear to have appealed his removal order. (Id.)

At some point, Petitioner was taken into custody by immigration authorities and then released on an OSUP. (Id.) Respondent does not say exactly when this occurred, but the most likely timing would have been after the Immigration Judge granted withholding of removal in 2018. (Dkt. 14 at 9.) Thus, it appears that Petitioner remained out of custody in the United States since late 2018 until his recent re-detention by immigration authorities. (Id.) Petitioner "reported to every office check-in and court appearance when ordered to do so," "includ[ing] reporting to [his] own detainment." (Dkt. 1 at 6.) Prior to being detained, Petitioner lived with his family in Lynwood, California. (Id. at 7.)

On June 25, 2025, Burbank police arrested Petitioner for theft by larceny, in violation of California Penal Code § 484. (Dkt. 8 at 2.) Respondent asserts without evidence that the case "is currently pending." (Id.) However, the Burbank City Attorney's Office reported to Petitioner's counsel that the charges against Petitioner were dismissed on February 11, 2026, based on completion of diversion pursuant to

California Penal Code §§ 1001.7 and 1001.9. (Dkt. 14-2 at 1; Dkt. 14-3.) Under California law, this means that the arrest is deemed to have never occurred. See Cal. Penal Code § 1001.9(a) ("Upon successful completion of a diversion program, the arrest upon which the diversion was based shall be deemed to have never occurred and the court may issue an order to seal the records pertaining to the arrest as described in Section 851.92.").

On May 15, 2026, Petitioner was taken into immigration custody and his OSUP was revoked. (Dkt. 8 at 2.) Petitioner appears to allege that his re-detention occurred at a scheduled check-in pursuant to his OSUP. (Dkt. 1 at 6.) Petitioner was not provided with a pre-deprivation hearing. (Id.)

On May 15, 2026, Petitioner was issued a Notice of Removal, informing Petitioner that Immigration and Customs Enforcement ("ICE") intended to remove him to Mexico. (Dkt. 8 at 2.) On June 1, 2026, Petitioner received a "Third Country Screening Notice," indicating that a credible fear interview established that Petitioner would be persecuted in Mexico, such that Petitioner would not be removed there. (Dkt. 14-4 at 2.) The notice states, "You established that it is more likely than not that you will be persecuted in Mexico." (Id.)

## III.

## SUMMARY OF PETITIONER'S CLAIMS

Petitioner's first claim for relief (Ground One) is that his indefinite detention violates the Fifth Amendment and Immigration and Nationality Act ("INA"). (Dkt. 1 at 6.) Petitioner's second claim for relief (Ground Two) is that his is not a flight risk and therefore his detention is a waste of government resources. (Id.) Petitioner's third claim for relief (Ground Three) is that he is suffering grossly inhumane conditions in detention. (Id.) Petitioner's fourth claim for relief (Ground Four) is that his indefinite detention violates his substantive and procedural due process rights. (Id. at 7.) Petitioner seeks immediate release from custody. (Id.)

## IV.

## LEGAL STANDARD

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. There is no question that these protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause provides both procedural and substantive protections. See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)). To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)). Under Matthews, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or

substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

In addition to the procedural protections of the Due Process Clause, "[s]ubstantive due process protects individuals from state action that interferes with fundamental rights." Regino, 133 F.4th at 959-60. Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993). By contrast, governmental action that does not infringe a fundamental right survives "substantive-due-process scrutiny so long as [the action is] rationally related to legitimate government interests." Stormans, Inc. v. Wiesman, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal quotation marks omitted). To assess whether there has been a violation of a fundamental right, courts must begin with "a careful description of the asserted fundamental liberty interest." Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (internal quotation marks omitted). With that careful description in mind, courts must then decide whether the asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was sacrificed." Khachatryan v. Blinken, 4 F.4th 841, 858 (9th Cir. 2021) (internal quotation marks and brackets omitted).

## V.

## ANALYSIS

As an initial matter, the Court concludes that Petitioner is not subject to mandatory detention under 8 U.S.C. § 1226(c) pursuant to the Laken Riley Act. The

relevant section of the Laken Riley Act that imposes mandatory detention when an alien is in removal proceedings and "is arrested for" a list of enumerated offenses, including theft, only applies to aliens who are currently in custody facing charges for such offense. See Helbrum v. Williams, 2025 WL 2840273, at *1 (D. Iowa, Sept. 30, 2025) ("After charges are dismissed, it is no longer accurate to say that a person 'is charged with' theft (present tense). Accordingly, Petitioner is not subject to mandatory detention merely because he was charged with a crime (past tense) that has now been dismissed with prejudice."); E.C. v. Noem, 2025 WL 2916264, at *11 (D. Nev. Oct. 14, 2025) ("Therefore, the Court finds that the statutory text's reference to a person who 'is charged with' or 'is arrested' for a theft-related offense, in the present tense, cannot be read to apply to a person has previously been arrested for and charged with a crime where they have also been acquitted of the crime."). Indeed, to avoid "serious due process concerns, . . . courts have construed the Laken Riley Act to apply only where an individual is *currently* charged with or arrested for the enumerated crimes, and conclud[ed] [that] mandatory detention is not required when charges are never filed, or where an individual has been acquitted." Singh v. Chestnut, 2026 WL 266021, at *2 (E.D. Cal. Feb. 2, 2026) (citations omitted); accord Hodgson v. Warden Mesa Verde Ice Processing Ctr., 2026 WL 1983957, at *2 (E.D. Cal. July 9, 2026).

As set forth above, Respondent asserts without evidence that the case against Petitioner for theft by larceny "is currently pending." (Dkt. 8 at 2.) By contrast, Petitioner has presented a sworn declaration and email communication with the Burbank City Attorney's Office establishing that the charges against Petitioner were dismissed on February 11, 2026, based on completion of diversion. (Dkt. 14-2 at 1; Dkt. 14-3.) Under California law, this means that the arrest is deemed to have never occurred. See Cal. Penal Code § 1001.9(a). Accordingly, the theft by larceny case is not pending and therefore Petitioner is not subject to mandatory detention under the Laken Riley Act. Thus, the Court will now proceed to analyze Petitioner's due

process claims.

It is undisputed that Petitioner arrived in the United States back in 2015 and at some point was taken into custody by immigration authorities and then released on an OSUP. (Dkt. 8 at 2.)[1] Thus, the Court concludes that once Petitioner was released from custody, he acquired "a protected liberty interest in remaining out of custody." Pinchi v. Noem, 792 F.Supp.3d 1025, 1032 (N.D. Cal. July 24, 2025) (collecting cases); Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1030 (N.D. Cal. 2025) ("The Supreme Court has recognized this protected liberty interest even though the released individual is subject to extensive conditions of release, like reporting regularly to a parole officer, not using alcohol, and not traveling out of the country."). Indeed, "the government's decision to release an individual from custody creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release." Pinchi, 792 F.Supp.3d at 1032 (internal quotation marks, brackets, and ellipses omitted). This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

It is also undisputed that immigration authorities re-detained Petitioner on May 15, 2026, without a pre-deprivation hearing. (Dkt. 8 at 2; Dkt. 1 at 6.) It is further undisputed that Petitioner "reported to every office check-in and court appearance when ordered to do so," "includ[ing] reporting to [his] own detainment." (Dkt. 1 at 6.) Thus, the Court concludes that Petitioner's re-detention by ICE on May 15, 2026, without a pre-deprivation hearing, violated his procedural due process rights. See, e.g., Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been

[1] The fact that Petitioner was released from custody necessarily means that Petitioner demonstrated to the satisfaction of immigration officials that Petitioner's release would not pose a danger to property or persons and that Petitioner was likely to appear for any future proceeding. See Fernandez Lopez v. Wofford, 2025 WL 2959319, at *2 (E.D. Cal. Oct. 17, 2025).

afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026); Fernandez Lopez v. Wofford, 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained."); Maldonado Vazquez v. Feeley, 805 F. Supp. 3d 1112, 1148 (D. Nev. 2025) ("Where, as here, a noncitizen is detained after having been ordered released, without any process provided by the Government for challenging his continued detention, detention becomes arbitrary and violates due process.").

Given this violation of Petitioner's due process rights, the Court further concludes that "Petitioner's release is necessary to return him to the status quo." Nazarian v. Noem, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025). The status quo is "the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted). The last uncontested status here is Petitioner's prior release on his OSUP. See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention."). "Accordingly, Petitioner's release from custody is the appropriate remedy." Id.; see Esmail v. Noem, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview *ex post facto*, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

Moreover, the Court concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained. See, e.g., Ixchop Perez v. McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed sub nom. Perez v. McAleenan, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) ("Accordingly, this court will join the consensus view among District Courts

concluding that . . . where . . . the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (internal quotation marks omitted)). Specifically, the Court concludes that Respondent must show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community. See, e.g., Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty. Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)); Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community.").

Additionally, given the recent attempt to remove Petitioner to Mexico despite immigration authorities expressly finding that Petitioner established "that it is more likely than not that [he] will be persecuted in Mexico," (Dkt. 14-4 at 2), the Court further concludes that Petitioner is entitled to written notice and a meaningful opportunity to respond in reopened removal proceedings under 8 U.S.C. § 1231(b)(3) before any attempted third-country removal (including, but not limited to Mexico). See, e.g., Valdez-Batista, 2026 WL 449531, at *5 ("Accordingly, should Respondents take steps to remove Petitioner to a country other than Cuba, they must provide Petitioner with written notice of their intent to do so and a meaningful opportunity to respond in reopened removal proceedings before an immigration judge under 8 U.S.C. § 1231(b)(3)."). Where the Government cannot remove a noncitizen to the country specified in their removal order, it may attempt to remove

that person to a third country, but it must comply with both the INA, 8 U.S.C. § 1231(b), and the Due Process Clause. See Aden v. Nielsen, 409 F. Supp. 3d 998, 1019 (W.D. Wash. 2019); Kumar v. Wamsley, 2025 WL 3204724, at *2 (W.D. Wash. Nov. 17, 2025) ("[T]he Government must follow the same multi-tiered process for selecting a country of removal that applied in the removal proceedings."). To comply with due process, the Government must provide sufficient notice and a meaningful opportunity for the noncitizen to present any claim of fear of persecution or harm upon removal to a designated third country. See Aden, 409 F. Supp. 3d at 1019. Moreover, the INA prohibits ICE from removing a noncitizen to any country where their "life or freedom would be threatened . . . because of [their] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). The Government must "make a determination regarding a noncitizen's claim of fear before deporting him." Aden, 409 F. Supp. 3d at 1010; 8 U.S.C. § 1231(b)(3)(A).

Many courts have held that if a noncitizen claims fear of removal to a designated third country, the Government must allow them to pursue withholding of removal through reopened removal proceedings before an immigration judge. See, e.g., Nguyen v. Scott, 796 F. Supp. 3d 703, 727 (W.D. Wash. 2025) ("Both the due process clause and the governing statute place the burden on the government—regardless of whether the country of deportation is designated during or after the removal hearing—to provide a meaningful opportunity to be heard on asylum and withholding claims. This cannot be satisfied by simply allowing the noncitizen to file a motion to reopen their removal proceedings; rather, the removal proceedings must be reopened so that a hearing can be held." (internal quotation marks, brackets, and citation omitted)); accord A.A.M. v. Andrews, 815 F. Supp. 3d 1124, 1141 (E.D. Cal. 2025); Gomez v. Mattos, 2025 WL 3101994, at *6 (D. Nev. Nov. 6, 2025); M.T.M. v. Andrews, 2025 WL 4058220, at *9 (C.D. Cal. Sept. 11, 2025). Here, Petitioner has presented a "Third Country Screening Notice" indicating that a

credible fear interview established that Petitioner would be persecuted in Mexico, such that Petitioner would not be removed there. (Dkt. 14-14 at 2.) Yet, Respondent asserts that Petitioner was issued a Notice of Removal to Mexico. (Dkt. 8 at 2.) Therefore, any further attempt to remove Petitioner to Mexico violates the INA. See 8 U.S.C. § 1231(b)(3)(A). Thus, the Court concludes that the Petition must be granted with the foregoing prospective injunctive relief.

A permanent injunction may be entered, at the discretion of the Court, where the movant shows "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, (2006). The Court finds that Petitioner has made such a showing here. Petitioner has suffered an irreparable injury by being re-detained in violation of his due process rights, and would again if Respondent repeats such conduct. Legal remedies such as damages would be inadequate to cure the unconstitutional deprivation of liberty. And the balance of hardships and public interest in merely requiring Respondent to provide basic due process in the event Respondent seeks to re-detain Petitioner and remove him to a third country, versus forcing Petitioner again to suffer detention and file a habeas petition to secure his release, favor the imposition of a limited injunction against future re-detention without notice and a pre-deprivation hearing, as well as basic due process requirements before removal to a third country.[2]

Thus, the Court concludes that Petitioner has made a sufficient showing under

---

[2] Where the party opposing injunctive relief is the government, "the third and fourth factors—the balance of equities and the public interest—merge." Garcia v. County of Alameda, 150 F.4th 1224, 1234 (9th Cir. 2025) (internal quotations omitted).

the eBay Inc. factors to justify a limited permanent injunction targeted at the specific harms presented in this case. See, e.g., Huy Cu v. Marin, 2026 WL 1427009, at *1-3 (C.D. Cal. May 21, 2026) (rejecting objections that prospective injunctive relief is inappropriate in the context of an immigration habeas petition); Araujo-Contreras v. Janecka, 2026 WL 1625368, at *1-4 (C.D. Cal. June 3, 2026) (rejecting objections to permanent injunctive relief requiring a pre-deprivation hearing before re-detention in the context of an immigration habeas petition finding a violation of the petitioner's procedural due process rights).

## VI.
## CONCLUSION

Based on the foregoing, the Court GRANTS the Petition as follows. Respondent shall immediately release Jonathan Argueta Castellon (A# 208-135-047) ("Petitioner") from custody on his prior Order of Supervision ("OSUP") and return any confiscated property and documents upon release. Respondent shall not re-detain Petitioner pursuant to 8 U.S.C. § 1231 without providing at least seven (7) days' notice and a pre-deprivation bond hearing. The pre-deprivation bond hearing shall occur before an Immigration Judge at which the Government bears the burden of proof to show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community. The Immigration Judge must conduct an individualized assessment of Petitioner's suitability for bond in light of the forgoing standard. Respondent shall not attempt to remove Petitioner to any country other than El Salvador without first providing written notice of intent to do so and a meaningful opportunity to respond in reopened removal proceedings under 8 U.S.C. § 1231(b)(3). Respondent shall not remove Petitioner to Mexico. Respondent shall file a notice of compliance no later than **three days from entry of Judgment**.

IT IS SO ORDERED.

DATED: August 19, 2026

HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE